**UNITED STATES of America**

v.

**Flore B. MacMURTRIE, d/b/a Flore Institute of Beautology, and Alice Irene Wands.**

**Civ. A. No. 21354.**

United States District Court
E. D. Pennsylvania.
June 28, 1962.

Sullivan Cistone, Asst. U. S. Atty., Drew J. T. O'Keefe, U. S. Atty., for plaintiff.

Wm. N. J. McGinniss, Ardmore, Pa., Samuel Lander, Philadelphia, Pa., for defendant.

FREEDMAN, District Judge.

This is a suit by the United States of America to recover overpayments from the owner and operator of a school of beauty culture[1] which the Government contends the school secured from the Veterans Administration by presenting false claims for instruction to veterans under Public Law 16, 78th Congress, March 24, 1943, Ch. 22, 57 Stat. 43, which provided for rehabilitation of disabled veterans and also under Public Law 346, 78th Congress, June 22, 1944, Ch. 268, 58 Stat. 287, known as the Servicemen's Readjustment Act of 1944, which amended Public Law 16 [38 U.S.C. (1946 Ed.) c. 12 note and §§ 693 et seq., 701].

The claim for recovery is based in part on the False Claims Act, 31 U.S.C.A. § 231, which authorizes recovery "of $2,000, and, in addition, double the amount of damages which the United States may have sustained" for the presentation of "any claim upon * * * the Government * * * knowing such claim to be false, fictitious, or fraudulent * * *."

The suit is old. The original complaint was filed on September 19, 1956 and thereafter was amended a number of times. The Government alleges that the overpayments amounted to $18,362.58, of which more than one-half ($11,677.48) represent payments made prior to September 19, 1950, six years or more before the filing of the original complaint. After a motion to dismiss was granted as to those claims beyond the six year Statute of Limitations (31 U.S.C.A. § 235), the Government was permitted to file a Re-amended Complaint Number 2 in which it prayed restitution of the claims which were barred under the False Claims Act.

The Government obviously had great difficulty in proving its case in these old transactions. It relied chiefly on an audit made in 1953 by the Veterans Administration. But the senior accountant in charge of the audit was unavailable and did not appear as a witness. A junior accountant who had participated in a part of the field work was the only witness regarding the audit. I received the audit report (P–10) in evidence, but its value is seriously diminished, as will appear below.

In an effort to create some order out of the mass of material, the Government's claim was broken down into seven categories. Three of these were abandoned by the Government as either trivial or not worth the effort to prove them. The remaining four categories represent claims made by the defendant to the Veterans Administration for hours of instruction:

(1) for periods after the last date of actual attendance by the students;

(2) not reported by defendant to the Pennsylvania Department of Public Instruction;

(3) given before the issuance of a student's permit and therefore not recognized under the Pennsylvania Beauty Culture Law (63 P.S. § 507 et seq.); and

(4) not reported to the Department of Public Instruction.

The listing of these categories brings me at once to the fundamental basis upon

---

1. Judgment dismissing the action as to defendant, Alice Irene Wands, was entered during the course of trial.

which the Government sought to prove its case and on which it had constructed its audit. Defendant made periodic reports to the Pennsylvania Department of Public Instruction at Harrisburg, showing the hours of instruction given to students who had registered with the State. Defendant also made periodic reports to the Veterans Administration showing the hours of instruction given under the contracts for which defendant received payment from the Government. Some time in 1953 the accountant of the Veterans Administration visited the school and asked for its original attendance records. These the school was unable to produce. Later, however, the accountant asked for copies of the school's reports to the Pennsylvania Department of Public Instruction. These copies the school produced. The accountant also obtained from the Pennsylvania Department of Public Instruction copies of the original reports on file with it. There was no substantial discrepancy between the original reports on file and the copies the defendant produced. (N.T. 198) It turned out on a comparison of the reports that those made to the Veterans Administration showed more hours of instruction—for which defendant was paid by the Government—than did the reports to the Pennsylvania Department of Public Instruction. It is on these discrepancies that the audit report and the Government's claim fundamentally are based.

The Government claims that in these circumstances, where the discrepancy favors the defendant's financial interest, the inference is justified that the overpayments were the result of false claims knowingly made by the defendant. The defendant maintains that there was much confusion during the period involved, that the Veterans Administration officials gave them conflicting orders and at times left them in doubt as to the appropriate procedure, that every effort was made to make accurate reports, that those in charge of the compiling of the information for the defendant were constantly urged by the defendant to make sure

that the reports were accurate, and that the reports the defendant ultimately signed were based on her confidence in the accuracy and reliability of the employees who did the reporting for her. Indeed, the Government's evidence is that aside from the missing original attendance records, the school cooperated fully in the making of the audit, and threw open all its books to the Government's accountants and answered all their questions. (N.T. 196-7).

The burden of proving its claim, of course, is on the Government. All of the elements involved in the claim must be proven by a fair preponderance of the evidence. The Government's proof amounts to little more than the identification of the audit report made by the Veterans Administration, which essentially is no more than the specification of discrepancies between the school's reports to the Pennsylvania Department of Public Instruction and its claims filed with the Veterans Administration for payment for instruction. But there is a vital difference in the purpose of these two reports. The reports to the Pennsylvania Department of Public Instruction were filed to obtain credits for attendance by students who had applied for certificates as beauty parlor operators and teachers. The reports to the Veterans Administration were made by the school as billings for compensation for its services rendered to students. Substantial reasons have been shown for not listing in the State reports hours of instruction actually given and for which the Veterans Administration should make payment. For example, it is perfectly clear that in many instances instruction was given to students who had not yet obtained the right as permittees to receive credit on such instruction. It is also clear that there were many hours of instruction given in which the discrepancy between the two reports resulted from the fact that the student involved was taking a "refresher" course. There was no reason to report to the Pennsylvania Department of Public Instruction hours of instruction given to a student

beyond those which he needed to obtain his certificate, yet such instruction was given, and if given, justified the defendant in claiming payment for these hours from the Veterans Administration. The Pennsylvania Department of Public Instruction would not give credit for more than seven hours of instruction in any one day, whereas the contracts required "a *minimum* attendance of 35 clock hours per week, 7 hours per day". (P–7, Schedule 1, page 1, para. A and page 2, para. B). The defendant claims that some of the additional hours reported to the Veterans Administration were for hours beyond seven on the same day. The contracts did not prohibit more than the minimum hours per day. Defendant would be entitled to payment for these hours, even though the hours of instruction would not be recognized by the Pennsylvania Department of Public Instruction for student credit. There is evidence that in some instances hours were transferred from the beginning to the end of the student's period of instruction because they had been given before the starting date recognized by the Pennsylvania Department of Public Instruction. In these instances the defendant claims that instruction actually was given for these hours, even though they were reported for a later period. This, of course, would violate the requirements of the Pennsylvania Department of Public Instruction; but it would not alter the fact that the instruction actually had been given even though it would not be a proper credit for the student who was seeking to obtain a certificate and was in effect a fraud on the State.

The Government's contracts specify hours of study and the unit price to be charged. These hours correspond to the requirements of the Pennsylvania statute. The Government argues that this provision and authorization of a charge for a diploma fee of $3.50, as well as the provision that the school be approved by the Pennsylvania Department of Public Instruction combine to show that the Veterans Administration would make payment only for hours of instruction which would be credited by the Pennsylvania Department of Public Instruction. But if the requirements of Pennsylvania law had such controlling force there would have been no need for the Government to have inserted in the printed form of contract with the school the requirement of 1,000 hours of instruction for the operator's course and 500 hours for the teacher-manager's course. Moreover, had the Veterans Administration so intended it, a simple provision in the agreement could have expressed the requirement that payment would be made only for hours of instruction entitled to credit by the State. It did not do so, and I do not believe I would be justified in reading it into the contract between the parties. It was natural to specify the number of hours in accordance with that required by the State licensing officials. But this is quite a different matter from a provision that the Veterans Administration would pay only for that instruction for which the State licensing officials would give credit.

I am unwilling to find against the defendant simply because of the discrepancy in the reports to the State and the Veterans Administration. Nor would it be proper to punish the defendant by a judgment such as is sought here, because she failed to produce the attendance records. The Veterans Administration could have provided an appropriate remedy in the contract, but it did not do so, and I will not substitute a penalty of absolute liability. Moreover, the Veterans Administration could have discovered the discrepancy between the reports at any time it chose to compare those it received with those filed with the Pennsylvania Department of Public Instruction. This too is an indication of the defendant's innocence, for defendant must have known that this possible comparison of her reports could have been made at any time. And since they were filed for many years, it is also evidence of the construction which the parties gave to the contracts between them.

Defendant is an elderly lady who has been in the business of teaching

beauty culture for 49 years. She impressed me as a person of uprightness, candor and honesty. I would consider her credibility seriously damaged if she had destroyed the attendance records. But there is nothing to show that the failure to produce the records had any element of fraud or willfulness. Indeed the evidence is that she cooperated fully with the Government's accountant in every other aspect of the audit. There is also evidence of the existence of confusion at the time, which is readily understandable. Those who worked on the records with defendant, as I saw them on the stand, impressed me as honest witnesses whose testimony was straightforward and candid. I find that the failure to produce this one set of records was completely innocent.

█ Defendant's chief witness and present partner, Mrs. Anne E. Valeriani, impressed me very favorably for the honesty of her testimony and her very obvious bewilderment at the charge that the school had filed false claims with the Government. I am unwilling to find against the defendant on a claim such as this on such unsatisfactory evidence as the Government has produced. I am reinforced in this conclusion because the Government did not call in corroboration of its claim of overcharges a single one of the students whose hours of instruction are alleged to have been inflated. On the contrary, it is the defendant who called one of them, Samuel Segal, and he explained that he had received the number of hours for which the Veterans Administration had been billed. During this testimony, the inaccuracy of the Government's chief exhibit, the audit report, was made apparent (N.T. 224, 225). Further, defendant's witness, Mrs. Valeriani, satisfactorily explained the discrepancies in other instances and pointed to additional inaccuracies.

In these circumstances I find that the Government has failed to sustain its burden, and that there is no proof of overpayments made by the Veterans Administration or of any false claim by the defendant.

To the extent that what I have said constitutes Findings of Fact and Conclusions of Law, this Opinion shall be treated as containing them. In addition I affirm plaintiff's Requests for Findings of Fact Nos. 1–5 incl., 6 (excluding the portion following the words "were not made available for audit"), 7 (excluding the words "the only available"), and 9; and defendant's Requests for Findings of Fact Nos. 1–5 incl., 7–10 incl., 12–26 incl., 29–36 incl., and 38. I also affirm plaintiff's Request for Conclusion of Law No. 1, and defendant's Requests for Conclusions of Law Nos. 1, 2 and 3 (omitting in each the words "in any degree"), 6–11 incl., and 14–17 inclusive. All other Requests for Findings of Fact and Conclusions of Law by either party not in harmony with those stated in this Opinion and not here expressly affirmed, are severally denied.

### ORDER

And Now, June 28, 1962, the action is dismissed and judgment is entered in favor of the defendant.